1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DIANNA SCOTT, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>COUNTY OF KERN, *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-00423-CDB<br><br>ORDER GRANTING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS<br><br>(Docs. 65, 66, 67, 70)<br><br>ORDER DIRECTING SUPPLEMENTAL BRIEFING<br><br>**10-DAY DEADLINE** |

Pending before the Court[1] is the motion of Defendants County of Kern, Kern County Sheriff's Office, Donny Youngblood, Robert Winn, Isaac Quiroz, Kyle McKeever, Jesse Norez, William Hinkle, Connor Bray, and Riley Haislip (collectively, the "County Defendants") to dismiss claims asserted in the operative, consolidated amended complaint. (Docs. 65, 66). On August 11, 2025, Plaintiffs Dianna Scott; Keaton Edward Monroe; the Estate of Stephen Ingle, by and through successor in interest C.R.I.; and C.R.I., a minor, by and through guardian ad litem Elizabeth Leal (collectively, "Plaintiffs") filed an opposition to the motion to dismiss, and on August 21, 2025, the County Defendants filed a reply. (Docs. 67, 70).

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on September 25, 2024, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 27).

I.     **Background**

A.     **Procedural History**

On April 9, 2024, Plaintiffs initiated this action with the filing of a complaint against the County of Kern and Defendant Youngblood.  (Doc. 2).  On September 25, 2024, the Court granted the parties' stipulated request to consolidate this action with *Estate of Stephen Ingle, et al. v. Kern County Sheriff's Office, et al.*, No. 1:24-cv-00463-KES-CDB.  (Doc. 27).  On June 4, 2025, the Court granted the parties' stipulated request to consolidate this action with *Scott, et al. v. Kern County Hospital Authority*, No. 1:25-cv-00378-CDB, and *Estate of Stephen Ingle, et al. v. Kern County Hospital Authority*, No. 1:25-cv-00377-CDB.  (Doc. 49).  On June 5, 2025, the Court granted the parties' stipulated request for leave for Plaintiffs to file a consolidated complaint.  (Doc. 50).  Plaintiffs filed the consolidated amended complaint (the "operative complaint") on June 12, 2025.  (Doc. 51).

B.     **Factual Allegations in the Operative Complaint**

In the operative complaint, Plaintiffs allege that Stephen Ingle ("Decedent") was arrested by the Bakersfield Police Department on March 1, 2023, and held in pre-trial detention at Kern County Jail, Central Receiving Facility ("CRF") in Bakersfield, California.  (Doc. 51 ¶ 51).  That same day, Defendant David Oragwam, a nurse, evaluated Decedent for an intake medical screening.  *Id.* ¶ 52.  Decedent met with Defendant Connor Bray, a classification officer, and expressed concerns relating to a head injury, skull fracture, and withdrawal symptoms resulting from prior substance abuse. "Despite [Decedent] being at risk of harm," he was housed in a "location where he was exposed to potential hazards."  *Id.* ¶ 53.  On March 2, 2023, at "approximately 1:20 P.M., inmates yelled for a 'man down' from cell A3-5 where [Decedent] was housed.  Defendant [Jesse Norez] responded and observed [Decedent] lying on the ground."  Decedent told Defendant Norez "that he was suffering from withdrawal symptoms."  *Id.* ¶ 54.  That same day, Decedent was evaluated by Defendant Jaspreet Singh, a nurse, "and cleared to remain housed at the CRF.  At that time, [Decedent] complained of his withdrawal symptoms worsening[,] specifically restlessness, feeling cold, body aches, and nausea."  *Id.* ¶ 55.

On March 3, 2023, at 12:08 p.m., Decedent "refused to attend his scheduled court

1     appearance, stating that he was feeling ill" and "declined medical attention." *Id.* ¶ 56. On March

2     4, 2024, at "approximately 8:30 A.M.," custody staff, including Defendants William Hinkle and

3     Robert Winn, responded to another "man down." At the time, Decedent was "housed in a

4     communal cell with seven (7) other inmates." Decedent was unresponsive and "lying on the floor

5     inside the shower stall," fully clothed with the water running. Decedent "had a bleeding

6     laceration on the left side of his head and stated he had 'slipped' while attempting to get into the

7     shower." *Id.* ¶ 57. Decedent was "subsequently transported via ambulance to Kern Medical

8     where he received medical treatment and received eight (8) stitches on the left side of his head,"

9     and was then transported back to CRF approximately four hours later. Upon his return, he was

10     evaluated by Defendant Leona Martin-Morales, a nurse, and "cleared to remain housed at the

11     CRF." *Id.* ¶ 58. He was placed in the same communal cell. *Id.* ¶ 59.

12        On March 4, 2023, Decedent was "found hanging in the shower" by Defendants Isaac

13     Quiroz, Kyle McKeever, and Jesse Norez. "Emergency personnel arrived on the scene" where

14     they found Decedent was "unconscious and without a pulse. [Decedent] was rushed to the

15     hospital thereafter" and, "[b]etween transport and arrival to Adventist Health Bakersfield," he

16     was "revived and subsequently admitted into the intensive care unit." *Id.* ¶ 61. Decedent was

17     placed on life support in the intensive care unit from March 4, 2023, to March 29, 2023.

18     Decedent died on March 29, 2023. *Id.* ¶¶ 62-63.

19        Defendant Riley Haislip "was assigned to investigate the facts and circumstances

20     surrounding [Decedent]'s death" and "conducted an investigation that served to shield Defendants

21     [Winn, Quiroz, McKeever, Norez, Hinkle, and Bray] from liability." The Kern County Sheriff's

22     Office's ("KCSO") "death review panel acknowledged and recommended that inmates should be

23     referred for mental health services when identified as suffering from withdrawals from alcohol

24     and/or drugs." *Id.* ¶ 64.

25 **II.  <u>Governing Authority</u>**

26        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

27     dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted."

28     Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's

sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

### III.    Parties' Contentions

For the purposes of ruling on the motion, the Court refers herein to the County Defendants as follows: Defendants Bray, Hinkle, McKeever, Norez, Quiroz, and Winn (collectively, the "individual County Defendants"); and Defendants Haislip, Winn, and Youngblood (collectively, the "supervisory County Defendants").  The County of Kern and KCSO will be referred to by

1    name.

2        County Defendants contend that Plaintiffs' second cause of action fails to state sufficient

3    facts to support a claim of deliberate indifference to medical needs as to the individual County

4    Defendants.  (Doc. 66 at 11-14).  They assert that the County of Kern cannot be held liable for

5    claims brought pursuant to *Monell v. Department of Social Services*[2] within the first, second, both

6    third, and fifth causes of action.  They further argue that the eighth cause of action for relief under

7    California Government Code § 845.6 fails to state a claim.  *Id.* at 15-17.[3]  As to the claims

8    brought pursuant to California Civil Code § 52.1 (the "Bane Act"), County Defendants assert that

9    Plaintiffs plead no facts showing Defendants used threats, intimidation, or coercion, nor that any

10   Defendant acted with specific intent to violate Decedent's rights.  *Id.* at 17-18.

11       County Defendants contend that the claims brought against Defendant Donny

12   Youngblood, the sheriff of Kern County, in his individual capacity should be dismissed as

13   Plaintiffs fail to set allege showing Defendant Youngblood knew about Decedent's condition,

14   ordered any action, or failed to act in a way that contributed to the harm.  *Id.* at 18-19.  County

15   Defendants assert that all claims against Isaac Quiroz and Riley Haislip should be dismissed for

16   lack of allegations showing personal involvement.  *Id.* at 19-22.  Lastly, County Defendants argue

17   that qualified immunity bars claims against the individual County Defendants and that the KCSO

18   is not a proper defendant and should be dismissed.  *Id.* at 22.

19       In opposition to the motion, Plaintiffs contend that they pled sufficient facts to state a

20   claim for failure to provide medical care.  (Doc. 67 at 14).  They assert that the operative

21   complaint includes "at least seven different customs, policies, practices, and/or procedures of the

22   County and the KCSO that were widespread and longstanding."  *Id.* at 15-16 (citing Doc. 51 ¶

23   142).  Plaintiffs argue that they "pled sufficient facts to support a reasonable inference that the

24   County Defendants knew [Decedent] was suffering from withdrawal symptoms yet took no

25

26   _____
     [2] 436 U.S. 658 (1978).

27       [3] The operative complaint includes two "third" causes of action.  (Doc. 54 at 32-35).  County
28   Defendants refer here to both "third" causes of action; the subsequent causes of action are numbered as
     they were in County Defendants' motion and in the operative complaint.

1    further action to summon care" and that the operative complaint "alleges that custody staff failed

2    to summon care, including on March 4, 2023 …" *Id.* at 17 (citing Doc. 51 ¶¶ 59-60).  Plaintiffs

3    provide that Decedent "remained in the same housing location without any designation regarding

4    his medical condition that would alert those in charge of his desperate need for a higher level of

5    care …" *Id.*

6           Regarding claims brought under the Bane Act, Plaintiffs argue that Decedent's "repeated

7    falls on March 2, 2023, and March 4, 2023," at which time Decedent "reported he was suffering

8    from withdrawals," indicated the need for immediate medical care, which was not provided to

9    him.  *Id.* at 17-19.  Plaintiffs assert that 11 in-custody deaths occurred in 2023 under Defendant

10   Youngblood's tenure and, despite this, Defendant Youngblood "failed to take corrective

11   measures, thereby acquiescing in and perpetuating the constitutional violations at issue."

12   Plaintiffs argue that "Defendant Youngblood can be held liable for systemic constitutional

13   violations which deprive an individual of their constitutional rights which Plaintiffs have

14   sufficiently alleged in the complaint."  *Id.* at 19-20.  As to the claims brought against Defendants

15   Quiroz and Haislip, Plaintiffs argue that Defendant Quiroz was "responsible for implementing

16   and carrying out KCSO policies and procedures" as a floor deputy on March 4, 2023, and

17   Defendant Haislip investigated the death of Decedent "in such a manner to shield [KCSO] and the

18   involved custody staff from liability," amounting to an "overt failure to investigate."  *Id.* at 20-21

19   (citing Doc. 51 ¶¶ 28, 64).

20          Plaintiffs assert that the County Defendants' "failure to provide adequate medical and

21   mental health treatment to inmates violated clearly established law" and, thus, County Defendants

22   are not entitled to qualified immunity.  *Id.* at 21.  Lastly, Plaintiffs cite to case law for the

23   proposition that the KCSO is properly named as a defendant in this action.  *Id.* at 21-22.

24          In reply, County Defendants assert that Plaintiffs' allegations in the operative complaint

25   are that only Defendants Bray and Norez had knowledge of Decedent's withdrawals, and not any

26   other individual County Defendant.  County Defendants separately argue that there are no

27   allegations of any defendant observing Decedent experience withdrawal symptoms, nor any

28   allegations setting forth that any defendant had reason to know of Decedent having a heightened

1  suicide risk, nor do Plaintiffs establish what Defendants Bray and Norez did or failed to do that

2  constituted an intentional decision to deny medical care to Decedent.  (Doc. 70 at 2-3).

3      County Defendants argue that, by failing to address their arguments, Plaintiffs concede

4  that any *respondeat superior* claims alleged in the first, second, both third, and fifth causes of

5  action should be dismissed as to the County of Kern.  As to the claims brought under California

6  Government Code § 845.6, County Defendants contend that the operative complaint does not

7  reference the "alleged withdrawal symptoms" as a basis for such claims and that "Plaintiffs' own

8  allegations show that medical treatment was summoned and provided each time some medical

9  issue arose." *Id.* at 4-5.  Regarding the Bane Act claims, County Defendants assert that Plaintiffs'

10  allegations "do not arise to the level of reckless disregard or deliberate indifference." *Id.* at 5-6.

11      County Defendants argue that Plaintiffs fail to allege facts "showing [Defendant]

12  Youngblood had notice of prior incidents of inmate suicides resulting from inmates experiencing

13  withdrawal symptoms, as opposed to in custody deaths … so as to establish a sufficient causal

14  connection" between the allegations and alleged deliberate indifference to Decedent committing

15  suicide, or interference with Plaintiffs' familial relationship with Decedent. *Id.* at 6-7.  County

16  Defendants assert that Plaintiffs fail to point to any facts that would support an inference that

17  Defendant Quiroz took, or failed to take, any action that contributed to the alleged injuries. *Id.* at

18  7.  County Defendants contend that Plaintiffs do not explain how Defendant Haislip's "post-

19  incident conduct could from the basis of liability on Plaintiffs' negligence, Government Code [§]

20  845.6, Bane Act, declaratory relief, or survival causes of action," nor any supervisory liability

21  claim. *Id.* at 7-8.

22      County Defendants argue that Plaintiffs do not cite to any case law preceding the events at

23  issue showing that the individual County Defendants "would have understood that they created a

24  substantial risk of harm to [Decedent] such that their actions or failure to act was unconstitutional

25  by housing [Decedent] in a communal cell when [he] complained of withdrawal symptoms," and,

26  thus, the individual County Defendants are entitled to qualified immunity. *Id.* at 8.  Lastly,

27  County Defendants assert that there is a "split amongst courts in the Ninth Circuit on whether or

28  not municipal departments can proceed in a case where the municipal entity is also named."

1  County Defendants contend that allowing a suit against KCSO in addition to the County of Kern

2  is redundant in a similar way to where an individual named in an official capacity is named

3  alongside the entity itself and, thus, KCSO should be dismissed from the action. *Id.* at 9-10.

4  **IV.   <u>Discussion</u>**

5       In the operative complaint, Plaintiffs assert the following claims under 42 U.S.C. § 1983

6  against the County Defendants:[4] (1) failure to protect/intervene (against Defendants Bray, Hinkle,

7  McKeever, Norez, Quiroz, and Winn); (2) failure to provide medical care (against Defendants

8  Bray, Hinkle, McKeever, Norez, Quiroz, and Winn); (3) deprivation of the Plaintiffs' right to

9  familial relationship due to actions at Kern County Sheriff's Office, Central Receiving Facility

10  ("CRF") (against Defendants Bray, Hinkle, McKeever, Norez, Quiroz, and Winn); (4) deprivation

11  of the Plaintiffs' right to familial relationship due to actions at Kern County Jail, Central

12  Receiving Facility ("KCJ") (against Defendants Bray, Hinkle, McKeever, Norez, Quiroz, and

13  Winn);[5] (5) *Monell* violations (against County of Kern and KCSO); and (6) supervisory liability

14  (against Defendants Youngblood, Winn, and Haislip). *See* (Doc. 51 at 24-47).

15       Under state law, Plaintiffs bring the following claims against the County Defendants: (7)

16  negligence – wrongful death (against all County Defendants); (9) Cal. Gov. Code § 845.6 (against

17  all County Defendants); (10) Cal. Civ. Code § 52.1 (against all County Defendants); (11)

18  declaratory relief (against all County Defendants); (12) survival action (against all County

19  Defendants). *See id.* at 47-56. Only one cause of action in Plaintiffs' operative complaint, (8)

20  negligence – medical malpractice, is not brought against any County Defendants. The Court will

21  address each of the claims against the County Defendants in turn.

22  **A.  Federal Claims Against Individual Defendants**

23  ***i.  Legal Standard***

24

25

26       [4] When referring to causes of action in the operative complaint by number, the Court shall use the numbering set forth herein.

27       [5] Based on Plaintiffs' allegations, it is unclear to the Court whether, when referring to CRF or

28  KCJ, Plaintiffs are, in fact, referring to separate facilities or the same facility. Thus, and for consistency, the Court shall retain herein Plaintiffs' references to CRF and KCJ unchanged.

1    To state a claim under section 1983, a plaintiff is required to show that (1) each defendant

2    acted under color of state law and (2) each defendant deprived him of rights secured by the

3    Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir.

4    2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*,

5    487 U.S. 42, 48 (1988)).  This requires the plaintiff to demonstrate that each defendant personally

6    participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th

7    Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

8    The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441

9    U.S. 520, 545 (1979); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021)

10    (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process

11    Clause").  Relevant here, the elements of a pretrial detainee's Fourteenth Amendment failure-to-

12    protect claim against an individual defendant are:

13    (1) The defendant made an intentional decision with respect to the
conditions under which the plaintiff was confined; (2) those

14    conditions put the plaintiff at substantial risk of suffering serious
harm; (3) the defendant did not take reasonable available measures

15    to abate that risk, even though a reasonable officer in the
circumstances would have appreciated the high degree of risk

16    involved—making the consequences of the defendant's conduct
obvious; and (4) by not taking such measures, the defendant caused

17    the plaintiff's injuries. With respect to the third element, the
defendant's conduct must be objectively unreasonable, a test that

18    will necessarily turn[] on the facts and circumstances of each
particular case.

19

20    *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original;

21    footnote, citation, and internal quotation marks omitted); *see Gordon v. Cnty. of Orange*, 888

22    F.3d 1118, 1125 (9th Cir. 2018).

23    The Supreme Court has explained that there is "no significant distinction between claims

24    alleging inadequate medical care and those alleging inadequate 'conditions of confinement.'

25    Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ...

26    the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991);

27    *see also Gordon*, 888 F.3d at 1124 ("we have long analyzed claims that government officials

28

1    failed to address pretrial detainees' medical needs using the same standard as cases alleging that

2    officials failed to protect pretrial detainees in some other way").

3         Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim

4    under the Fourteenth Amendment, a plaintiff must establish the same four factors as noted above.

5    *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071.  In contrast to the knowing and purposeful

6    state of mind in the first element, the remaining elements are subject to an objective standard.  *See*

7    *Castro*, 833 F.3d at 1070-71.  As noted *supra*, the third element must be viewed on each case's

8    particular facts and circumstances, and the plaintiff must prove the defendant acted with "more

9    than negligence but less than subjective intent – something akin to reckless disregard." *Sandoval*,

10   985 F.3d at 669 (quoting *Castro*, 833 F.3d at 1071).

11        The Fourteenth Amendment also protects liberty interests in the companionship between

12   parents and children.  "Parents and children may assert Fourteenth Amendment substantive due

13   process claims if they are deprived of their liberty interest in the companionship and society of

14   their child or parent through official conduct." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d

15   1062, 1075 (9th Cir. 2013).  "Only official conduct that shocks the conscience is cognizable as a

16   due process violation … A prison official's deliberately indifferent conduct will generally 'shock

17   the conscience' so as long as the prison official had time to deliberate before acting or failing to

18   act in a deliberately indifferent manner." *Id.* (citations and quotations omitted).

19                    ***ii.   Analysis – First and Second Causes of Action***

20        As a preliminary matter, and as set forth above, the same legal standard governs Plaintiffs'

21   first and second causes of action (failure to protect and failure to provide medical care,

22   respectively).  Thus, though County Defendants appear to seek their dismissal from only the

23   second cause of action, the Court will proceed to analyze the sufficiency of the operative

24   complaint as to both the first and second cause of action.  (Doc. 66 at 11-14).  Additionally,

25   County Defendants seek the dismissal of all claims against Defendants Quiroz and Haislip.  As

26   such, County Defendants include in their motion that said Defendants should be dismissed from

27   the first through fourth causes of action.  *Id.* at 19-22.  Though Defendant Quiroz is, in fact,

28   named in the first through fourth causes of action, Defendant Haislip is not named in any of them.

1    Thus, as Defendant Haislip is not included in said causes of action, the Court will not analyze

2    County Defendants' arguments thereto.

3         In the operative complaint, Plaintiffs assert that Defendants Winn, Quiroz, McKeever,

4    Norez, Hinkle, and Bray had "actual or constructive notice of the risk of potential suicide or

5    injury to [Decedent's] person due to the ongoing withdrawal" and had sufficient time to take

6    protective measures.  Plaintiffs state that the individual County Defendants made the "intentional

7    decision to deny [Decedent] the proper medical care by placing [Decedent] back in cell A3-5,

8    without any special monitoring regarding his mental health."  (Doc. 51 ¶¶ 101; *see id.* ¶¶ 103,

9    116-118).  The Court will proceed to analyze Plaintiff's factual allegations for each individual

10   County Defendant in turn.

11        Defendant Bray

12        Plaintiffs provide that, at the time of the events at issue, Defendant Bray was a

13   classifications officer for KCSO working at KCJ and was tasked with carrying out KCSO policies

14   and procedures and for ensuring inmate safety by way of proper housing and classification.  *Id.* ¶

15   32.  Plaintiffs state that Decedent met with Defendant Bray and expressed concerns relating to a

16   head injury, skull fracture, and withdrawal symptoms resulting from prior substance abuse.

17   "Despite [Decedent] being at risk of harm," he was housed in a "location where he was exposed

18   to potential hazards."  *Id.* ¶ 53.  These are the only factual allegations set forth by Plaintiffs in

19   support of the claims against Defendant Bray.

20        Plaintiffs do not plead sufficient facts supporting any reasonable inference that Defendant

21   Bray was aware of Decedent's heightened risk of suicide or suicidal ideations.  Plaintiffs do not

22   assert that, for example, Decedent disclosed to Defendant Bray that his withdrawal symptoms

23   could result in a heightened risk of suicide or self-harm.  And Plaintiffs do not assert Defendant

24   Bray conducted an improper or deficient interview with Decedent.  Thus, Plaintiffs fail to

25   adequately plead that Defendant Bray did not take reasonable available measures to abate

26   substantial risk, even though a reasonable officer in his circumstances would have appreciated the

27   high degree of risk involved and making the consequences of Defendant Bray's conduct obvious.

28   *See, e.g., Hernandez v. Cnty. of Santa Clara*, No. 19-CV-07888-EJD, 2020 WL 3101041, at *4

1   (N.D. Cal. June 11, 2020) ("As to the initial intake decision, Plaintiff alleges that Aguilar had

2   suicidal ideations.  Assuming, as the Court must, that Aguilar did in fact have suicidal ideations,

3   there is no indication that County intake officers were aware of those suicidal ideations.  Plaintiff

4   does not allege, for example, that Aguilar disclosed his ideations to the intake officers, who then

5   ignored them.  Nor does Plaintiff allege that the unnamed officers failed to discover Aguilar's

6   suicidal ideations because they did not conduct a proper intake interview.").

7            Defendants Hinkle and Winn

8        Plaintiffs provide that, at the time of the events at issue, Defendant Hinkle was a senior

9   corrections deputy for the County of Kern at KCJ, assigned to work as a floor deputy at the time

10  Decedent was found unresponsive in his cell, and was responsible for carrying out KCSO policies

11  and procedures and ensuring inmate safety.  (Doc. 51 ¶ 31).  Defendant Winn was, at the time of

12  the events at issue, a housing sergeant for the County of Kern at KCJ and was responsible for

13  supervision of KCSO custody staff at county jails, including KCJ, and for promulgation of

14  policies and procedures.  Defendant Winn directly supervised Defendants Hinkle, McKeever,

15  Norez, and Quiroz.  *Id.* ¶ 27.

16        Plaintiffs allege that Defendants Hinkle and Winn, along with other custody staff,

17  responded to a "man down" at approximately 8:30 a.m. on March 4, 2023, at Decedent's

18  communal cell.  Decedent was unresponsive and "lying on the floor inside the shower stall," fully

19  clothed with the water running.  Decedent "had a bleeding laceration on the left side of his head

20  and stated he had 'slipped' while attempting to get into the shower."  *Id.* ¶ 57.  Decedent was

21  "subsequently transported via ambulance to Kern Medical where he received medical treatment

22  and received eight (8) stitches on the left side of his head," and was then transported back to CRF

23  approximately four hours later.  Upon his return, he was evaluated by Defendant Martin-Morales

24  and "cleared to remain housed at the CRF."  *Id.* ¶ 58.  He was placed in the same communal cell.

25  *Id.* ¶ 59.

26        Plaintiffs do not plead sufficient facts supporting any reasonable inference that Defendants

27  Hinkle and Winn were aware of Decedent's heightened risk of suicide or suicidal ideations, nor

28  that Defendants were deliberately indifferent to Decedent's medical needs.  The facts as pled in

1    the operative complaint allege only that, upon a "man down" call, Defendants Hinkle and Winn

2    responded.    Upon responding, Decedent informed Defendants that he had slipped while

3    attempting to get into the shower, though he presented fully clothed.    Decedent was then

4    transported for medical care and, upon his return, evaluated by Defendant Martin-Morales and

5    returned to the same communal cell.

6         Plaintiffs fail to adequately allege that Defendants Hinkle and Winn did not take

7    reasonable available measures to abate substantial risk, even though a reasonable officer in their

8    circumstances would have appreciated the high degree of risk involved and making the

9    consequences of Defendants' conduct obvious.    The fact that Decedent was found unresponsive

10   in the shower with the water running, while fully clothed, does not provide notice of a substantial

11   risk and obvious consequences from a failure to abate said risk.    Neither do the nature of the

12   injuries, namely a laceration on the left side of Decedent's head.    Further, Plaintiffs allege that

13   Decedent informed custody staff that he had slipped while attempting to enter the shower and,

14   thus, did not himself make Defendant Hinkle nor Defendant Winn aware of any heightened risk.

15   Taken together, the facts as alleged do not present a scenario in which a reasonable officer would

16   have appreciated a high degree of risk requiring measures to abate that risk.    *See, e.g., Cabral v.*

17   *Cnty. of Glenn*, 624 F. Supp. 2d 1184, 1190 (E.D. Cal. 2009) ("While it is alleged that Officer

18   Dahl knew Plaintiff had psychiatric issues, Plaintiff has not alleged that the officer knew Plaintiff

19   was suicidal and that he was not receiving medical care, or that Officer Dahl attempted to

20   interfere with Plaintiff's receipt of such medical attention.    To the contrary, after completing the

21   cell extraction, Plaintiff was treated by paramedics, was allegedly acting in compliance with the

22   officers' demands, and appeared to be in good physical health.").

23        Defendants McKeever and Quiroz

24        Plaintiffs allege that, at the time of the events at issue, Defendant McKeever was a

25   corrections deputy for the County of Kern at KCJ, assigned to work as a floor deputy at the time

26   Decedent was found unresponsive in his cell, and was responsible for carrying out KCSO policies

27   and procedures and ensuring inmate safety.    *Id.* ¶ 29.    At the time of the events at issue,

28   Defendant Quiroz was also a corrections deputy for the County of Kern at KCJ, assigned to work

1    as a floor deputy at the time Decedent was found unresponsive in his cell, and was responsible for

2    carrying out KCSO policies and procedures and ensuring inmate safety.  *Id.* ¶ 28.

3        Plaintiffs allege that Defendants McKeever and Quiroz, along with Defendant Norez,

4    responded to Decedent's cell at approximately 4:45 p.m. on March 4, 2023, and found Decedent

5    hanging in the shower in his cell.  "When emergency personnel arrived on the scene, [Decedent]

6    was found unconscious and without a pulse."  Decedent was rushed to the hospital and placed on

7    life support in the intensive care unit.  *Id.* ¶¶ 61-62.  Decedent died on March 29, 2023.  *Id.* ¶ 63.

8        As the Court noted above, Plaintiffs do not allege in the operative complaint that either

9    Defendant McKeever or Quiroz had prior contact with Decedent, nor that either Defendant had

10   been informed or otherwise had reason to know Decedent necessarily was at a heightened risk of

11   harm.  "To make out [their] claim of a constitutional violation, Plaintiff[s] must show that

12   Defendants made these decisions with 'reckless disregard' of an imminent risk that [Decedent]

13   would commit suicide."  *Hernandez*, 2020 WL 3101041, at *4.  Plaintiffs set forth only that

14   Defendants McKeever and Quiroz found Decedent hanging in the shower in his cell.  Plaintiffs

15   offer no facts setting forth their knowledge of a heightened risk and a "reckless disregard" of that

16   risk.  *Cf. NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020) ("… the Deputies observed a

17   rope hanging from NeSmith's light on the night before his suicide.  Under those circumstances,

18   the rope presented a clear warning that NeSmith presented an imminent suicide risk.  Every

19   reasonable official would [have understood] that failing to recognize that risk violated NeSmith's

20   rights.") (citations and quotations omitted; alteration in original).

21       <u>Defendant Norez</u>

22       Plaintiffs allege that Defendant Norez, on March 2, 2023, "responded and observed

23   [Decedent] lying on the ground" after inmates yelled for a "man down" from cell A3-5.  Plaintiffs

24   further allege that Decedent, that same day, was evaluated by Defendant Jaspreet Singh, a nurse,

25   and cleared to remain at the CRF, and Decedent complained of his withdrawal symptoms

26   worsening.  *Id.* ¶¶ 54-55.  As recounted above, on March 4, 2023, Defendant Norez, along with

27   Defendants McKeever and Quiroz, responded to Decedent's cell at approximately 4:45 p.m. and

28   found Decedent hanging in the shower in his cell.  "When emergency personnel arrived on the

scene, [Decedent] was found unconscious and without a pulse." Decedent was rushed to the hospital and placed on life support in the intensive care unit. *Id.* ¶¶ 61-62. Decedent died on March 29, 2023. *Id.* ¶ 63.

Plaintiffs fail to state a claim against Defendant Norez for the same reasons they fail to state a claim against the other individual County Defendants. The facts as pled in Plaintiffs' operative complaint fail to support any reasonable inference that Defendant Norez did not take reasonable available measures to abate substantial risk, even though a reasonable officer in his circumstances would have appreciated the high degree of risk involved and making the consequences of Defendant's conduct obvious.

The facts as pled in the operative complaint are that, upon a "man down" call, Defendant Norez responded. Upon responding, Defendant Norez observed Decedent lying on the ground. Decedent informed Defendant that he was suffering from withdrawal symptoms. Decedent was evaluated by a nurse and cleared to remain housed at the CRF. Plaintiffs do not allege that Decedent informed Defendant Norez of a heightened risk of suicide or self-harm, or that Defendant Norez reasonably should have been aware of such a risk otherwise. Plaintiffs allege that Decedent informed Defendant Norez of worsening withdrawal symptoms, including restlessness, feeling cold, body aches, and nausea (*id.* ¶ 55), but no facts as alleged set forth that, in context, conveyance of such information would result in a reasonable officer in such circumstances appreciating a resulting substantial risk of harm and obvious consequences therefrom. Further, Plaintiffs acknowledge that Decedent was evaluated by a nurse following this encounter, who cleared Decedent to remain housed at the CRF.

Taken together, the facts as alleged do not present a scenario in which a reasonable officer would have appreciated a high degree of risk requiring measures to abate that risk. *See Cabral*, 624 F. Supp. 2d at 1190. And though Plaintiffs allege that, on March 4, 2023, Defendant Norez found Decedent hanging in the shower in his cell, as to said event, Plaintiffs set forth the same facts against Defendant Norez as they do against Defendants McKeever and Quiroz. Thus, Plaintiffs offer no facts setting forth Defendant Norez's knowledge of a heightened risk and a "reckless disregard" of that risk. *Cf. NeSmith*, 808 F. App'x at 445.

1          ***iii.   Analysis – Third and Fourth Causes of Action***

2          County Defendants do not argue for dismissal of the individual County Defendants from

3     the third and fourth causes of action, aside from Defendant Quiroz.  However, as the third and

4     fourth causes of action are dependent upon the first and second causes of action, the Court will

5     proceed to analyze their sufficiency as to all named County Defendants.

6          The Court finds that Plaintiff's third and fourth causes of action fail against Defendants

7     Bray, Hinkle, Winn, McKeever, Quiroz, and Norez for the same reasons as noted above.

8     Namely, Plaintiffs have failed to sufficiently allege that any of said Defendants exhibited

9     deliberate indifference.  *See Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527,

10    528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally

11    contingent on the existence of an underlying constitutional violation.  Therefore, because there is

12    no evidence that either Undersheriff Mineau or Lassen County was deliberately indifferent to

13    Parker's serious medical needs, Schwarz's claim for loss of familial association—which is

14    predicated on their purportedly unconstitutional care of Parker—likewise fails as a matter of

15    law.") (citation omitted).

16          **B.  Federal Claims Against County Entities**

17          ***i.  Legal Standard***

18          "[A] local government may not be sued under § 1983 for an injury inflicted solely by its

19    employees or agents."  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694

20    (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its

21    lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

22    the injury that the government as an entity is responsible under § 1983."  *Id.*  Local governments

23    are responsible only for their own illegal acts; they are not vicariously liable for their employees'

24    actions.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

25          A municipality is held liable only when "action pursuant to official municipal policy of

26    some nature cause[s] a constitutional tort."  *Monell*, 436 U.S. at 691.  This "official municipal

27    policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred

28    pursuant to a longstanding practice or custom."  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.

1    1999) (citation and quotations omitted).  A policy can also be one of action or inaction, such as a

2    failure to train employees when such omissions amount to the government's policy.  *See Long*,

3    442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees

4    can amount to deliberate indifference[.]").

5        Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he

6    possessed a constitutional right of which he was deprived; (2) that the municipality had a policy;

7    (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4)

8    that the policy is the moving force behind the constitutional violation.  *Burke v. County of*

9    *Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

10        Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations

11    regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of

12    truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of

13    action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

14    the opposing party to defend itself effectively.  Second, the factual allegations that are taken as

15    true must plausibly suggest an entitlement to relief, such that it is not unfair to require the

16    opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel.*

17    *Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652

18    F.3d 1202, 1216 (9th Cir. 2011)).

19        "Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure

20    to implement procedural safeguards to prevent constitutional violations.  In an 'omission' action,

21    a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to

22    the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the

23    [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty.*

24    *of San Diego*, No. 24-CV-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024)

25    (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

26                                *ii.  Analysis – Monell Claims*

27        County Defendants do not seek dismissal of Plaintiffs' standalone *Monell* claim, the fifth

28    cause of action.  *See* (Doc. 70 at 4) ("County Defendants are not challenging whether sufficient

1  facts were alleged to support a Monell claim against the County in Plaintiffs' fourth cause of

2  action."). Rather, they appear to seek dismissal of *Monell* claims included within the allegations

3  in the first, second, third, fourth, and sixth causes of action. *See* (Doc. 66 at 16; Doc. 70 at 4); *but*

4  *see* (Doc. 66 at 23). However, as it is somewhat unclear in the County Defendants' motion as to

5  precisely which causes of action for which they seek dismissal of *Monell* claims, the Court will

6  proceed to first discuss the *Monell* claims in the fifth cause of action before turning to the first,

7  second, third, fourth, and sixth causes of action.

8       Plaintiffs allege that the County and high-level supervisors such as Defendant

9  Youngblood "knew or should have known of a history of years of notice of ongoing failure to

10 provide inmates indicated and timely reasonable medical/mental health care," "inadequate and/or

11 incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate

12 provision of health care and delivery thereof, denying access to outside hospitals or other mental

13 health programs," and "failure to take corrective measures, including ignoring judicial orders to

14 abate or take corrective action …" (Doc. 51 ¶ 69). Plaintiffs also allege that, in 2023, KCSO

15 jails have recorded 11 in-custody deaths, including five from natural causes and six from suicide.

16 *Id.* ¶ 71. Plaintiffs further plead that, from January 2008 through December 2023, 22 inmates

17 have died by suicide within the jails of the County of Kern. *Id.* ¶ 73. Plaintiffs provide ten other

18 instances dating from 2020 to 2023 where individuals died while detained in County facilities as a

19 result of suicide, or circumstances suggestive of suicide. *Id.* ¶¶ 74-84. Of Plaintiffs' listed

20 incidents, eight involve death by hanging or asphyxiation. *Id.* ¶¶ 74-76, 79, 81-84.

21      Taking these assertions as true, Plaintiffs have adequately alleged a *Monell* claim.

22 Plaintiffs have set forth a number of policies, practices, or customs related to the handling of

23 detainees which, they provide, caused the alleged constitutional violations herein, and that ten

24 other individuals have died by suicide close in time, with eight of those ten utilizing hanging or

25 asphyxiation, the same manner of death of Decedent. *See, e.g., Kidwell-Bertagnolli v. Cnty. of*

26 *Sonoma*, No. 20-CV-03291-JSC, 2020 WL 4901197, at *6 (N.D. Cal. Aug. 20, 2020) (finding

27 plaintiffs stated *Monell* claim where they alleged the policies they asserted to have caused the

28 constitutional violations and set forth that five other individuals had committed suicide in custody

1    as a result of said policies).  Plaintiffs' standalone *Monell* claim, the fifth cause of action, is

2    sufficiently pled against the appropriate Defendants, namely the County of Kern and KCSO.

3         However, any *Monell* claims included within the first, second, third, fourth, and sixth

4    causes of action are brought against improper defendants.  The first, second, third, and fourth

5    causes of action are brought against individual County Defendants, not municipal entities, and

6    thus include improper defendants for any *Monell* claims.  The sixth cause of action is brought

7    against the supervisory County Defendants, sued in their individual capacity.  The sixth cause of

8    action, thus, also includes improper defendants for any *Monell* claims.

9         Therefore, any *Monell* claims included in the first, second, third, fourth, and sixth causes

10   of action will be dismissed.

11              ***iii.   Analysis – Inclusion of Both County and KCSO***

12        Next, the Court addresses County Defendants' contention that there is a "split amongst

13   courts in the Ninth Circuit on whether or not municipal departments can proceed in a case where

14   the municipal entity is also named."  (Doc. 70 at 9).  County Defendants argue that the KCSO is a

15   redundant Defendant, in a manner similar to how an individual named in an official capacity is

16   redundant when named alongside the entity with which they are affiliated, and thus, KCSO

17   should be dismissed from the action.  *Id.* at 9-10.

18        The Ninth Circuit recently reaffirmed its prior holdings that both a California municipal

19   police department and a California county sheriff's department were "public entities" that may be

20   sued.  *See Duarte v. City of Stockton*, 60 F.4th 566, 573 (9th Cir. 2023) ("As to the Stockton

21   Police Department, we held over thirty years ago that municipal police departments in California

22   'can be sued in federal court for alleged civil rights violations.'  More recently, we reaffirmed this

23   holding and extended it to California's county sheriffs' departments.") (citing *Karim-Panahi v.*

24   *L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) & *Streit v. Cnty. of Los Angeles*, 236

25   F.3d 552, 565–66 (9th Cir. 2001)); *see also Hulet v. Cnty. of Tuolumne*, No. 1:23-CV-01217-

26   KES-HBK, 2024 WL 3758360, at *5 (E.D. Cal. Aug. 12, 2024) (analyzing *Duarte* and finding

27   the same).

28        As to the redundant defendant theory put forth by County Defendants, another judge of

1  this Court recently analyzed a similar contention. In *Chapple v. County of Sacramento*,[6] the

2  defendant County of Sacramento and the Sacramento County Sheriff's Department argued that

3  claims against the department failed because it is not a distinct legal entity from the county and,

4  as the department is a unit of the county, it is redundant. In support of their argument, the

5  *Chapple* defendants relied upon *Pierce v. San Mateo County Sheriff's Dep't*, 232 Cal. App. 4th

6  995, 1000 n.1 (2014).

7      The court, ruling on motions to dismiss, found that the "'rationale' the County and

8  Department rely upon in *Pierce* is a one sentence footnote" and that there "is no analysis in this

9  footnote to support the redundant defendant theory that the Department and the County propose

10  here." *Chapple*, 2025 WL 1678402, at *10 (citing *Hulet*, 2024 WL 3758360, at *5; *Est. of Debbs

11  v. Cnty. of Sacramento*, No. 2:20-CV-01153-TLN-DB, 2023 WL 4108320, at *4 (E.D. Cal. June

12  21, 2023); & *Harris by & through Lester v. Cnty. of Sacramento*, No. 2:17-CV-02346-MCE-AC,

13  2018 WL 3752176, at *3 (E.D. Cal. Aug. 8, 2018)). The Court observed it was "unclear whether

14  this statement was meant to refer only to the San Mateo County Sheriff's Department or to all

15  sheriff's departments generally" and that courts "have found § 1983 actions can proceed

16  simultaneously against a County and a Sheriff's Department. The Department and County's

17  arguments to the contrary are unpersuasive at this stage." *Id.*

18      County Defendants cite to *Brown v. County of Kern*[7] for the proposition that the Eastern

19  District of California has previously found that the County of Kern was the proper defendant in a

20  section 1983 action and KCSO was not appropriately included. However, in support, *Brown* cites

21  to an opinion of the Northern District of California that predates both *Streit* and *Duarte*, as well as

22  an out-of-circuit opinion from the District of Colorado.

23      County Defendants additionally cite to *Shannon v. County of Sacramento*[8] for the

24  proposition that KCSO is duplicative as the theories brought against it and the County of Kern are

25  identical, and to *Morales v. City of Delano*[9] for the proposition that including both KCSO and the

26

27  [6] No. 2:24-CV-01939-TLN-CSK, 2025 WL 1678402 (E.D. Cal. June 13, 2025).
    [7] No. 1:06-CV-00121-OWW-TAG, 2008 WL 544565, at *4 (E.D. Cal. Feb. 26, 2008).

28  [8] No. 2:15-CV-00967-KJM-CKD, 2016 WL 1138190, at *6–7 (E.D. Cal. Mar. 23, 2016).
    [9] No. 1:10-CV-1203-AWI-JLT, 2010 WL 2942645, at *5 (E.D. Cal. July 23, 2010).

1  County of Kern ignores the possibility of a double recovery award against a single funding

2  source.

3        However, *Shannon* predates *Duarte* and its conclusion that it is "unnecessary to sue both a

4  county and the county sheriff's office for identical claims with identical theories of liability" is

5  preceded by discussion that sheriff's departments, when standing alone, are generally not

6  considered "persons" for purposes of section 1983.  *Shannon*, 2016 WL 1138190, *6 (citing

7  *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J., concurring)).  The

8  Ninth Circuit in *Duarte* expressly discounted said reading of the decision in *Kama*, referring to

9  the same quote from the concurrence cited in *Shannon*, and explained that "concurring opinions

10  have no binding precedential value" and that the concurrence did not cite *Karim-Panahi* or *Streit*.

11  *Duarte*, 60 F.4th at 574 (citations and quotations omitted) (reversing district judge's

12  determination that the City of Stockton and Stockton Police Department are not persons within

13  the meaning of § 1983.).

14        Similarly, *Morales* also predates *Duarte* and cites the same quote from the concurrence in

15  *Kama* before finding that allowing "the matter to proceed against the agency of the City of

16  Delano and the City itself, ignores the likelihood of an improper award of a double recovery

17  against a single funding source." *Morales*, 2010 WL 2942645, at *4-5 (citing, *inter alia*, *Kama*,

18  394 F.3d at 1240).  In all events, the Court finds that any risk of "double recovery" adequately

19  can be addressed through appropriate jury instructions and verdict form prompts.

20        Thus, at this stage, the Court finds unpersuasive the County Defendants' arguments that

21  the inclusion of the County of Kern as a defendant renders KCSO redundant in this action.  As to

22  dismissal of KCSO, the County Defendants' motion will be denied.

23  **C.  Federal Claims Against Supervisory Defendants**

24  ***i.  Legal Standard***

25        Liability may not be imposed on supervisory personnel for the actions or omissions of

26  their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676-77; *see*, *e.g.*,

27  *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (noting that liability

28  attaches if the named supervisory defendants "themselves acted or failed to act unconstitutionally,

1   not merely that a subordinate did"), *overruled on other grounds by Castro*, 833 F.3d at 1070;

2   *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of

3   state law to be liable under section 1983 there must be a showing of personal participation in the

4   alleged rights deprivation: there is no respondeat superior liability under section 1983").

5       Supervisors may be held liable only if they "participated in or directed the violations, or

6   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045

7   (9th Cir. 1989). "The requisite causal connection may be established when an official sets in

8   motion a 'series of acts by others which the actor knows or reasonably should know would cause

9   others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009);

10  accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based

11  on inaction in the training and supervision of subordinates).

12      Supervisory liability may also exist without any personal participation if the official

13  implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

14  rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

15  F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

16  *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

17      To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

18  deprivation resulted from an official policy or custom established by a ... policymaker possessed

19  with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

20  707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between

21  such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

22  *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

23  involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

24  *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

25              *ii.  Analysis*

26      Plaintiffs bring supervisory liability claims pursuant to section 1983 against Defendants

27  Haislip, Winn, and Youngblood. (Doc. 51 at 44). County Defendants argue that such

28  supervisory liability claims against Defendants Haislip and Youngblood should be dismissed, but

make no such argument for claims against Defendant Winn.  *See* (Doc. 66).  As the bases for the claims against all three supervisory Defendants are substantially the same, the Court will address the sufficiency of the supervisory liability claims against Defendants Haislip, Winn, and Youngblood.

Plaintiffs assert that Defendant Haislip, a detentions sergeant at KCSO, was assigned to investigate the death of Decedent and was responsible for carrying out KCSO policies and procedures relating to internal investigations for in-custody deaths.  (Doc. 51 ¶ 33).  Plaintiffs contend that Defendant Haislip "conducted an investigation that served to shield [Defendants Winn, Quiroz, McKeever, Norez, Hinkle, and Bray] from liability with regard to [Decedent]'s death."  *Id.* ¶ 64.

Plaintiffs argue that, as a housing sergeant, Defendant Winn occupied one of the "highest-level supervisory positions" at KCJ, and was responsible for supervision of KCSO staff at the jails of the County of Kern, and for the promulgation of policies and procedures and allowance of practices and customs.  Plaintiffs allege that Defendant Winn supervised Defendants Hinkle, McKeever, Norez, and Quiroz.  *Id.* ¶ 27.

Plaintiffs assert that, as Sheriff for the County of Kern, Defendant Youngblood was in charge of the facility where Decedent was detained.  Plaintiffs alleges that, as a supervisor, Defendant Youngblood knowingly failed to ensure enforcement of policies that set in motion the acts and events that he knew, or reasonably should have known, would result in constitutional injury to Decedent.  *Id.* ¶ 24.  Plaintiffs contend that Defendant Youngblood should have known of years of "ongoing failure to provide inmates … medical/mental health care," "inadequate and/or incompetent staffing," "inadequate cells and beds," "inadequate provision of health care," denial of "access to outside hospitals or other mental health programs," and "failure to take corrective measures."  Plaintiffs state that Defendant Youngblood was on notice of said deficiencies and the "number of lawsuits against the [County] … and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference …"  *Id.* ¶ 69.

Plaintiffs assert that Defendants Haislip, Winn, and Youngblood failed to properly hire and train the employees of their agencies; failed to monitor, investigate, and discipline employees; and ratified unconstitutional customs, policies, practices, and procedures. These acts or omissions, Plaintiffs allege, were a proximate cause of the deprivations that led to violation of Decedent's constitutional rights. *Id.* ¶ 149, 152-153. In support of these claims, Plaintiffs set forth only the same evidence as noted *supra* in subsection (B)(ii) discussing the *Monell* claims, namely prior cases of in-custody deaths and suicides. Plaintiffs' primary contention is that, as Sheriff, Defendant Youngblood's inaction and acquiescence resulted in constitutional deprivations and the actions or omissions of the individual County Defendants were ratified by Defendants Haislip, Winn, and Youngblood. *Id.* ¶¶ 151-153.

First, as noted *supra* in subsection (A)(ii), Plaintiffs fail to plead any cognizable claims for relief against the individual County Defendants. It follows that Plaintiffs, thus, fail to adequately allege any acquiescence from the supervisory Defendants in such claims. Second, Plaintiffs do not set forth any particular policy, custom, or practice implemented by any supervisory County Defendant that was so deficient that the policy itself is a repudiation of the constitutional rights at issue and is the moving force of the constitutional violations alleged herein. Rather, Plaintiffs put forth only conclusory and general allegations that the supervisory Defendants ratified unconstitutional policies. Third, the factual pleadings offered by Plaintiffs in support of the *Monell* claims does not, by itself, support supervisory liability claims. To credit such allegations, alone, as supporting supervisory liability would, in effect, instead result in vicarious liability, which is impermissible in section 1983 actions. *See Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.") (quotation omitted).

Thus, Plaintiffs fail to plead cognizable claims against Defendants Haislip, Winn, and Youngblood under a theory of supervisory liability. *See. e.g., Est. of Miller v. Cnty. of Sutter*, No. 2:20-CV-00577-KJM-DMC, 2020 WL 6392565, at *14 (E.D. Cal. Oct. 30, 2020) ("The complaint here does not allege the Sheriff made any decisions about Miller's care. It does little

more than recite the elements of a claim for supervisory liability."); *Keates*, 883 F.3d at 1243 ("The complaint here does not allege that Carter was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that Carter promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused Koile's allegedly unconstitutional conduct. These allegations do not suffice to state a claim of supervisory liability."); *Kidwell-Bertagnolli*, 2020 WL 4901197, at *4 ("These allegations, however, do not indicate that Sheriff Essick was 'directly involved in the allegedly unconstitutional conduct' which resulted in Mr. Bertagnolli's death or that 'he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [Sheriff Essick] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [Deputy Ordaz and Deputy 1-10's] allegedly unconstitutional conduct.'") (alterations in original; quoting *Keates*, 883 F.3d at 1243).

### D. Qualified Immunity

#### i. Legal Standard

The doctrine of qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, a court must determine whether, (1) taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and (2) if so, whether the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In its qualified immunity analysis, a court may use either prong as its starting point and, thus, exercise its "discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021).

Under the first prong of the analysis, "whether a constitutional right was violated … is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009);

1    *see Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of

2    the qualified immunity analysis, the court considers whether the facts show a violation of a

3    constitutional right).  In contrast, "the 'clearly established' inquiry is a question of law that only a

4    judge can decide."  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see Reese v. Cnty. of*

5    *Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

6         "To be clearly established, a legal principle must have a sufficiently clear foundation in

7    then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus

8    of cases of persuasive authority.'"  *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Ashcroft v. al-*

9    *Kidd*, 563 U.S. 731, 741-42 (2011)).  Stated differently, "[a] right is clearly established when it is

10   'sufficiently clear that every reasonable official would have understood that what he is doing

11   violates that right.'"  *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting

12   *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted).  A section 1983 plaintiff

13   bears the burden of proof that the right allegedly violated was clearly established at the time of

14   the alleged misconduct.  *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) ("There is no

15   analogous burden on § 1983 defendants to find factually on-point cases clearly establishing the

16   lawfulness of an officer's actions.  Nor must § 1983 defendants come forward with precedent

17   showing that the unlawfulness of their conduct was not clearly established."); *Romero v. Kitsap*

18   *Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

19        "For a constitutional right to be clearly established, a court must define the right at issue

20   with specificity and not … at a high level of generality."  *Gordon v. Cnty. of Orange*, 6 F.4th 961,

21   968 (9th Cir. 2021) (internal quotations and citation omitted).  When identifying the right that was

22   allegedly violated, a court must define the right more narrowly than the constitutional provision

23   guaranteeing the right, but more broadly than all of the factual circumstances surrounding the

24   alleged violation.  *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998).

25   "The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions

26   at the earliest possible stage of litigation."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010)

27   (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

28

While a defendant may raise a qualified immunity defense at an early stage in the proceeding, the defense may not be amenable to dismissal by way of a motion made pursuant to Rule 12(b)(6) where facts necessary to establish the affirmative defense implicate matters outside the complaint or disputed issues of fact. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). Nevertheless, a qualified immunity defense properly may be resolved by a Rule 12(b)(6) motion bearing in mind that, on a motion to dismiss, a court must accept the allegations in the complaint as true when determining whether a defendant is entitled to immunity. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023); *see also Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

### ii.   *Analysis*

It is plain that, at the time of the events at issue, the law was clearly established that pretrial detainees had a Fourteenth Amendment right to be free from deliberate indifference to their medical needs, including the risk of suicide. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060; *Wright v. Dunne*, No. 15-CV-02671-TLN-CKD, 2020 WL 977963, at *8 (E.D. Cal. Feb. 28, 2020) ("The Court agrees that there exists a clearly established right to be free from deliberate indifference to serious mental health needs, including risk of suicide.") (citing *Clouthier*, 591 F.3d at 1245)). However, this general statement of law does not define in this case the applicable constitutional right at issue for purposes of determining the applicability of qualified immunity. *See Gordon*, 6 F.4th at 968; *Watkins*, 145 F.3d at 1092-93.

Plaintiffs bear the burden of proof to show that the rights allegedly violated were clearly established at the time of the alleged misconduct. *See Hopson*, 71 F.4th at 708. However, Plaintiffs cite to no authority in support of their assertion that County Defendants are not entitled to qualified immunity. *See* (Doc. 67). The Court has conducted an independent review of relevant authority and finds that, under the facts as pled in the operative complaint, the County Defendants are entitled to qualified immunity.

In *Taylor v. Barkes*,[10] the Supreme Court reversed the Third Circuit's holding that the

---

[10] 575 U.S. 822 (2015).

Eighth Amendment granted prisoners the "right to the proper implementation of adequate suicide prevention protocols." *Taylor*, 575 U.S. at 824. Relevant Ninth Circuit precedent holds similarly, namely, that pre-trial detainees have a right to be "free from deliberate indifference to their serious risk of suicide but not a right to suicide screening or prevention protocols." *Est. of Funabiki by & through Funabiki v. Cnty. of Whitman*, No. 2:21-CV-00089-MKD, 2024 WL 4425682, at *11 (E.D. Wash. Oct. 5, 2024) (collecting cases); *see NeSmith v. Cnty. of San Diego*, No. 15CV629 JLS (JMA), 2016 WL 4515857, at *6 (S.D. Cal. Jan. 27, 2016) (finding that "the Supreme Court was clear in *Taylor* that cases holding that reckless or deliberate indifference to suicidal tendencies of particular inmates do not, for purposes of qualified immunity, establish an affirmative obligation to implement a government entity-wide suicide prevention policy"); *Germaine-McIver v. Cnty. of Orange*, No. SACV 16-01201-CJC (GJSx), 2018 WL 6258896, at *11-12 (C.D. Cal. Oct. 31, 2018) ("The Ninth Circuit has also not clearly established any right to a certain standard of suicide prevention protocols … *Cabrales* and *Conn* fail to develop any right in such a concrete and factually defined context to make it obvious to all reasonable government actors …") (quotation and citation omitted) (referencing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1087 (1989), *and opinion reinstated*, 886 F.2d 235 (9th Cir. 1989), & *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011)).

As noted *supra*, Plaintiffs have failed to advance any cognizable claims of deliberate indifference to Decedent's serious risk of suicide by the individual County Defendants. At the time of the events set forth in the operative complaint, clearly established law did not obligate the individual County Defendants to conduct certain specific screening or prevention protocols. As such, under the facts as pled in the operative complaint, Defendants Bray, Hinkle, McKeever, Norez, Quiroz, and Winn are entitled to qualified immunity.

Regarding supervisory Defendants Haislip, Winn, and Youngblood, Plaintiffs bring only vague claims of failure to properly hire, train, and discipline employees; promulgation of deficient policies, customs, or practices; and ratification of unconstitutional policies, customs, or

1    practices.  At the time of the events set forth in the operative complaint, clearly established law

2    did not obligate the supervisory County Defendants to implement a specific, or superior, suicide

3    treatment or prevention policy.  It follows that, under the facts as pled in the operative complaint,

4    Defendants Haislip, Winn, and Youngblood are entitled to qualified immunity.  *See NeSmith*,

5    2016 WL 4515857, at *7 ("Although particular government actors are obligated not to act with

6    deliberate indifference to a particular inmate's suicidal ideations, based on *Taylor*, that does not

7    clearly establish a broader duty for government entities to implement a suicide prevention policy

8    that meets certain unspecified standards.").

9                              **E.  State Law Claims**

10                          ***i.  Negligence – Wrongful Death***

11          A claim for negligence under California law requires a plaintiff to show that the defendant

12   (1) had a legal duty to use reasonable care; (2) breached that duty; and that (3) the breach was the

13   proximate cause of (4) the plaintiff's injury.  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th

14   1333, 1339 (1998). "In California, prison officials owe detainees a duty to protect them from

15   foreseeable harm."  *Cotta v. County of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing

16   *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008)).  Unless the law provides

17   otherwise, public employees are liable to the same extent as private persons, and "public entities

18   are generally liable for injuries caused by the negligence of their employees acting in the scope of

19   their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).

20          While Plaintiffs assert their negligence claims, the seventh cause of action, against all

21   County Defendants, in their motion to dismiss, County Defendants limit their arguments to

22   Defendants Haislip and Quiroz and grounds unique to those defendants only, and do not address

23   any of the other County Defendants.  *See* (Doc. 66).

24          The Court acknowledges that the standard of culpability for a negligence claim is a "much

25   lower level" than the standard for a deliberate indifference claim.  *Cravotta v. Cnty. of*

26   *Sacramento*, 717 F. Supp. 3d 941, 967 (E.D. Cal. 2024) (citing *Castro*, 833 F.3d at 1071).

27   Nevertheless, Plaintiffs' factual allegations do not assert a cognizable theory of negligence

28   against either Quiroz or Haislip.

As to Quiroz, Plaintiffs' only relevant factual allegation in the operative complaint is that he was serving as a floor deputy, "responsible for implementing and carrying out KCSO policies and procedures and ensuring the safety of inmates," when he found Decedent hanging in the shower on March 4, 2023.  (Doc. 51 ¶ 28).  Other allegations in the operative complaint attributable to Quiroz are omnibus allegations associated with all individual County Defendants, including that Quiroz had "actual or constructive notice of the risk of potential suicide or injury to [Decedent's] person."  *Id.* ¶ 103.  But that is a legal conclusion unsupported by any factual allegations.  Without more, the Court is unable to discern any theory of negligence cognizable within the complaint.  *See Cravotta*, 717 F. Supp. 3d at 967 ("Plaintiff has failed to allege how the Officer Defendants breached that duty here, or how that breach caused Plaintiff injury. Plaintiff has not alleged the Officer Defendants failed to conduct direct-view safety checks, or failed to administer life saving measures they were medically trained to administer.  Plaintiff has also not alleged how any such measures could have produced a different outcome.").

The pleadings as to Haislip fare no better.  His involvement in the relevant events is limited to the conduct of a post-death investigation that Plaintiffs allege (without factual support) "served to shield [Defendants Winn, Quiroz, McKeever, Norez, Hinkle, and Bray] from liability with regard to [Decedent]'s death."  (Doc. 51 ¶ 64).  As with Quiroz, it remains unclear what duty was breached, and how, and importantly, how any such breach caused Decedent's injury and/or damages.[11]

### ii.   California Government Code § 845.6

California Government Code § 845.6 "imposes liability on the public employee and public entity when: (1) the public employee knows or has reason to know of the need, (2) for a prisoner's immediate medical care, and (3) fails to take reasonable action to summon such medical care.  Liability under section 845.6 is established by serious and obvious medical

---

[11] Although the negligence cause of action is not dismissed as to the other individual County Defendants, it is unlikely the Court would exercise supplemental jurisdiction over this claim given dismissal of the Section 1983 claims against these Defendants, unless Plaintiffs amend their complaint to cognizably plead their Section 1983 causes of action.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

1    conditions requiring immediate care." *Borges v. City of Eureka*, No. 15-CV-00846-YGR, 2017

2    WL 363212, at *18 (N.D. Cal. Jan. 25, 2017) (internal quotations and citations omitted) (citing

3    *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993), & *Castaneda v. Dep't of Corr. &*

4    *Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013)).

5         A public employee and public entity are liable under § 845.6 only for a failure to summon

6    medical care.  Any failure to provide further treatment, or to ensure further diagnosis, is not

7    actionable under § 845.6.  *Castaneda*, 212 Cal. App. 4th at 1072.  Under § 845.6, a public entity

8    is vicariously liable for the acts of its employees within the scope of their employment.  *Horton*

9    *by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) (citing Cal. Gov't Code §

10   815.2).

11        Here, Plaintiffs do not identify any basis for their § 845.6 claims aside from the alleged

12   federal constitutional violations.  Plaintiffs do not plead any facts showing that County

13   Defendants failed to summon medical care despite knowing, or having a reason to know, of such

14   need.  On the contrary, the facts as alleged by Plaintiff in the operative complaint appear to show

15   County Defendants summoning medical care when learning of a need for immediate care.  *See*

16   (Doc. 51 ¶¶ 54, 55, 58, 61).  As such, Plaintiffs fail to bring any cognizable claims under § 845.6

17   against any County Defendant.

18                    ***iii.   California Civil Code § 52.1 ("Bane Act")***

19        A plaintiff alleging a Bane Act claim "must show (1) intentional interference or attempted

20   interference with a state or federal constitutional or legal right, and (2) the interference or

21   attempted interference was by threats, intimidation or coercion."  *Allen v. City of Sacramento*,

22   234 Cal. App. 4th 41, 67 (2015) (citing Cal. Civ. Code § 52.1).  The claim must allege facts that

23   would allow an inference that the defendant had a specific intent to violate the constitutional right

24   at issue.  *Id.*  Specific intent may be shown by demonstrating that the defendant acted "in reckless

25   disregard" of that right.  *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803

26   (2017), *as modified* (Nov. 17, 2017).

27        Several district courts, including judges of this Court, "have adopted the position that a

28   prisoner who successfully proves that prison officials acted or failed to act with deliberate

                                          31

1    indifference to his medical needs ... adequately states a claim for relief under the Bane Act

2    because deliberate indifference claims extend far beyond ordinary tort claims and have been

3    associated with affirmatively culpable conduct." *Cravotta v. Cnty. of Sacramento*, 717 F. Supp.

4    3d 941, 964 (E.D. Cal. 2024) (quotations and citation omitted) (collecting cases).

5          Here, Plaintiffs do not identify any basis for their Bane Act claims aside from the alleged

6    federal constitutional violations. As noted *supra*, Plaintiffs fail to adequately allege cognizable

7    claims against all individual and supervisory County Defendants. Thus, Plaintiffs fail to bring

8    any cognizable Bane Act claims against them. *See Cravotta*, 717 F. Supp. 3d at 965 ("However,

9    as held above, Plaintiff has failed to sufficiently plead his deliberate indifference claim against the

10    Officer Defendants. Thus, the Court finds he has also failed to plead a Bane Act claim against the

11    Officer Defendants, and the Bane Act claim against them is dismissed.").

12          Regarding the County of Kern and KCSO, pursuant to California Government Code §

13    815.2, Plaintiffs assert that they are vicariously liable for the acts or omissions of their employees

14    committed within the course and scope of their employment. (Doc. 51 at 52-53). However,

15    Plaintiffs fail to cognizably plead any such acts or omissions. Thus, Plaintiff's Bane Act claims

16    against the County of Kern and KCSO fail. *See Lapachet v. California Forensic Med. Grp., Inc.*,

17    313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) ("Plaintiff argues that his complaint contains

18    sufficient allegations against defendant Christianson so as to impose liability on the County. This

19    argument is unavailing because, as already discussed above, plaintiff's complaint contains no

20    factual allegations against defendant Christianson."); *cf. Brink v. Cnty. of San Diego*, No.

21    23CV1756 DMS (SBC), 2024 WL 3315992, at *8 (S.D. Cal. July 3, 2024) (discussing California

22    statutory authority regarding county immunity from Bane Act claims, concluding that immunity

23    does not attach where public employee knew or had reason to know that the prisoner was in need

24    of immediate medical care and failed to take reasonable action to summon such care, and finding

25    Bane Act claim against county sufficient where complaint alleged nurse defendants failed to

26    summon medical care despite obvious symptoms).

27                      ***iv.  Declaratory Relief***

28          "The Ninth Circuit has directed district courts faced with whether to entertain claims for

1    declarative relief to consider, among other factors, whether the claim will settle all aspects of the

2    controversy or serve some other useful purpose." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-

3    CV-04769-RS, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015) (citing *Gov't Emps. Ins. Co.*

4    *v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

5          Here, Plaintiffs set forth no independent useful purpose in their claim for declaratory relief

6    that would not otherwise necessarily be answered upon adjudication of the other claims in the

7    action. *See* (Doc. 51 at 55-56). The rights of the Plaintiffs, the obligations of the Defendants, and

8    the legal relations between the parties will be necessarily clarified upon adjudication of the claims

9    brought pursuant to section 1983 and under state law. Thus, the claims for declaratory relief will

10   be dismissed as to the County Defendants. *See United States v. State of Wash.*, 759 F.2d 1353,

11   1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful

12   purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

13   afford relief from the uncertainty and controversy faced by the parties.").

14                    **F. Survival Action and Standing**

15                        ***i. Legal Standard***

16         As to Plaintiffs' twelfth cause of action (survival action), *see* (Doc. 51 at 56), survivors

17   may bring claims arising under section 1983 "if the relevant state's law authorizes a survival

18   action. Under California's survival statute, a cause of action for or against a person is not lost by

19   reason of the person's death but survives subject to the applicable limitations period. A

20   decedent's successor in interest has standing to bring any causes of action that the decedent

21   himself could have asserted." *Thao v. Swarthout*, No. 2:21-CV-00731-DC-AC, 2024 WL

22   5247219, at *5 (E.D. Cal. Dec. 30, 2024) (citing Cal. Civ. Proc. Code § 377.20; *Hayes*, 736 F.3d

23   at 1228; & *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1052 (9th Cir. 2018)). Thus, the Court

24   will presume that Plaintiffs intend to bring the survival action claims pursuant to California's

25   survival statute.

26         In California, "the plaintiff has the burden to establish standing under the survival statute."

27   *Feliz v. Cnty. of Orange*, No. SACV 10-1664-CJC (MLGx), 2012 WL 12887770, at *2 (C.D. Cal.

28   Mar. 13, 2012). Where "there is no personal representative for the estate, the decedent's

'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law …" *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) (citing Cal. Civ. Proc. Code §§ 377.30, 377.32).  In contrast, a wrongful death action may be brought "by decedent's personal representative or any of a defined list of persons that includes a decedent's spouse, children, or heirs." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (quotations omitted; citing Cal. Civ. Proc. Code § 377.60).  Decedent's "parents may sue for the wrongful death of their child 'if they were dependent on the decedent.'" *Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1445 (2001) (citing Cal. Civ. Proc. Code § 377.60(b)).  A "'person who seeks to commence an action ... as the decedent's successor in interest' under California law must file a declaration that contains certain information." *Garcia v. Adams*, No. F 04-5999 AWI SMS, 2006 WL 403838, at *12 (E.D. Cal. Feb. 17, 2006)  (quoting Cal. Civ. Proc. Code § 377.32).

### ii.    *Analysis*

County Defendants do not seek dismissal of the survival action claims, aside from merely asserting that they fail due to absence of "an underlying violation" as to Defendant Quiroz and Haislip.  (Doc. 66 at 20-21; citing *Hayes*, 736 F.3d at 1229).  In their opposition, Plaintiffs do not address the survival action claims.  Nevertheless, the Court is obligated to satisfy itself that Plaintiffs properly have standing to assert a survival action claim.  *See, e.g., Garcia v*, 2006 WL 403838, at *3 (noting that standing is a necessary element of federal court jurisdiction that must be satisfied before determine whether a party adequately states a claim).

In the operative complaint, Plaintiffs set forth that minor Plaintiff C.R.I., through guardian ad litem Elizabeth Leal, "brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful death actions.  Plaintiff also brings her claims individually and on behalf of [Decedent] on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law." (Doc. 51 ¶ 20).

Furthermore, Plaintiffs represent that Dianna Scott is the biological mother of Decedent

1  and "sues in her individual capacity and as a wrongful death Plaintiff pursuant to California Code

2  of Civil Procedure § 377.60 and 42 U.S.C. sections 1983 and 1988." (Doc. 51 ¶ 17). Plaintiff

3  Scott was "a dependent of [Decedent], pursuant to Section 377.60(b) …" *Id.* ¶ 18. Plaintiff

4  Keaton Edward Monroe is Decedent's son and "sues in his individual capacity and as a wrongful

5  death Plaintiff pursuant to California Code of Civil Procedure § 377.60 and 42 U.S.C. sections

6  1983 and 1988." *Id.* ¶ 19.

7       At this juncture, it is unclear to the Court what the positions of the parties are as to the

8  issue of minor Plaintiff C.R.I.'s standing to bring survival claims. As compliance with applicable

9  state law may implicate Plaintiffs' standing to bring survival claims in general, the Court will

10  defer decision as to the viability of Plaintiff's twelfth cause of action and direct the parties to

11  submit supplemental briefing. Additionally, the operative complaint reflects that Plaintiffs Scott

12  and Monroe, along with minor Plaintiff C.R.I., bring the section 1983 causes of action. *See id.*

13  However, Plaintiffs do not set forth that Scott and Monroe are successors in interest of Decedent

14  but, rather, that they bring wrongful death claims. Wrongful death claims may not be brought

15  pursuant to section 1983. *See Est. of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 &

16  1159 n.4 (S.D. Cal. 2015) (collecting cases and explaining that only a survival action may be

17  brought pursuant to section 1983, not a wrongful death action, and noting that "the § 1983 claim

18  may not be brought as a wrongful death action to vindicate the rights of [decedent's] wife and

19  children because Fourth Amendment rights are personal to the decedent")

20       In their supplemental briefing, the parties shall address whether (1) minor Plaintiff C.R.I.

21  is appropriately named as successor in interest to the claims at issue, (2) the California Code of

22  Civil Procedure § 377.32 is applicable and whether Plaintiffs complied thereto, (3) there are any

23  other considerations relevant to identification of the proper party to bring the survival claims,

24  including Plaintiffs' compliance and pleading of compliance with the declaration requirement

25  under Cal. Civ. Proc. Code § 377.32, and (4) there is a basis for Plaintiffs Scott and Monroe

26  bringing section 1983 claims despite being "wrongful death Plaintiffs." *See Arres v. City of

27  Fresno*, No. CV F 10–1628 LJO SMS, 2011 WL 284971, at *8 (E.D. Cal. Jan. 26, 2011) (noting

28  that the "record remains unclear as to [decedent's mother's] status to pursue a Fourth Amendment

1    survival claim for [decedent] as personal representative" or whether "[the minor children] appear

2    as heirs superior to [decedent's mother] to warrant that they pursue a Fourth Amendment survival

3    claim" and granting leave to allege additional facts as to the appropriate party to bring a survival

4    action).

5                              **G.  Leave to Amend**

6            Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be

7    freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the

8    merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

9    Cir. 2000).  However, courts may, in their discretion, choose to decline leave to amend due to

10   futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a

11   repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*,

12   629 F.3d 876, 892–893 (9th Cir. 2010).   A court's discretion in denying leave to amend is

13   particularly broad after plaintiff has already been afforded an opportunity to amend the complaint.

14   *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

15          Here, Plaintiffs request leave to amend if any portion of County Defendants' motion is

16   granted.  (Doc. 67 at 23).  The Court finds that the above deficiencies may be remedied by

17   amendment and will extend leave to amend.  Because the issues presented by the survival action

18   claims may implicate Plaintiffs' standing regarding certain other claims, the Court will set a

19   deadline for the amendment of the complaint after the Court receives the parties' supplemental

20   briefing directed herein and resolves the standing issue addressed above.

21   **V.    Conclusion and Order**

22          Based on the foregoing, IT IS HEREBY ORDERED that:

23          1.  County Defendants' motion to dismiss (Docs. 65, 66) is GRANTED in part:

24                  a.  The motion is GRANTED as to the first, second, third, fourth, sixth, ninth,

25                      tenth, and eleventh causes of action (as numbered herein) and said causes of

26                      action are DISMISSED without prejudice against the County Defendants;

27                  b.  The motion is GRANTED as to the seventh cause of action (as numbered

28                      herein) only as to Defendant Quiroz and Defendant Haislip and said cause of

1  action is DISMISSED without prejudice against Defendant Quiroz and

2  Defendant Haislip;

3      c.  The motion is DENIED as to the fifth cause of action (as numbered herein) and

4          as to dismissal of the Kern County Sheriff's Office; and

5      d.  The Court defers ruling on the motion as to the twelfth cause of action.

6  2.  Plaintiffs are granted leave to amend all claims dismissed without prejudice.  A

7      deadline for the filing of any amended complaint shall be set by the Court following

8      completion of the supplemental briefing addressed below.

9  3.  **Within 10 days** of entry of this order, Plaintiff SHALL FILE supplemental briefing

10     setting forth their positions as to the following:

11     a.  Whether minor Plaintiff C.R.I. is appropriately named as successor in interest

12         to the claims at issue;

13     b.  Whether the California Code of Civil Procedure § 377.32 is applicable and, if

14         so, whether Plaintiffs complied thereto;

15     c.  Whether there are any other considerations relevant to identification of the

16         proper party to bring the survival claims, including Plaintiffs' compliance and

17         pleading of compliance with the declaration requirement under Cal. Civ. Proc.

18         Code § 377.32; and

19     d.  Whether there is any basis for Plaintiffs Scott and Monroe bringing section

20         1983 claims despite being "wrongful death Plaintiffs."

21  4.  **Within 7 days** of Plaintiffs' filing of the supplemental briefing addressed above,

22      Defendants SHALL FILE a responsive supplemental brief.

23  IT IS SO ORDERED.

24  Dated:  __**October 30, 2025**__

25  _____
    UNITED STATES MAGISTRATE JUDGE

26

27

28

37